Okey, J.,
dissenting. In the action of William E. King against Conrad Bridenbaugh, the district court of Hardin county, at its March .term, 1881, rendered a judgment quieting the title of King, as against Bridenbaugh, to a forty acre lot in that county. The action was prosecuted under Rev. Stats. §.5779. That section is broader than the former provisions on the subject, as it does not require that the plaintiff should have the legal title. Collins v. Collins, 19 Ohio St. 468. But where the title of each party, as here, is only an equity, the equity of plaintiff must not only be superior to that of the defendant, but such an equity as fairly calls upon the court to enjoin the defendant from clothing himself with the legal title. That King presents a case calling for such relief, I deny. Indeed, to give him relief is to violate the principle that a right in equity cannot grow out of an illegal and void transaction. •
The view which supports the judgment in favor of King, is well presented in the foregoing opinion by Owen, J. I regret my inability to concur in it, and deeming the decision a clear departure from principle, I feel called upon to state the grounds of my dissent. In doing so I find it necessary to re-state the facts.
James Scott purchased from the state of Ohio the land in dispute, and paid for it in full, May 14, 1836, as appears from the receipt of the receiver of public lands at Tiffin, and on the same day Scott produced the receipt at the Ohio land office, to the register, who gave him a certificate which entitled him to a deed from the governor. During the same year, Scott conveyed the land to John McKiggon, who, in 1879, conveyed the same to Conrad Bridenbaugh, plaintiff in error. It is said the consideration for the latter conveyance was grossly inadequate, but it was and is, so far as the record discloses, entirely satisfactory to Scott as well as McKiggon, and nobody else has ^any' interest in the question. Allega *417 tion and proof on that subject are alike immaterial. Briden-baugh’s position is as impregnable as was Scott’s, at the time he made the purchase, paid the money and received the receipt and certificate.
In 1866, George Clarke, of New York, upon the testimony of witnesses who committed perjury, procured from the governor a deed for the land, which deed contained the false statement that McKiggon had died, leaving as his only heir Mary J. Potter, of New York, who had conveyed the land to Clarke. That deed, after reciting the purchase by Scott and the payment of the purchase money, further recited the conveyance by Scott to McKiggon, “ and that on the 9th day of July, 1866, Mary J. Potter, only heir of the said John McKiggon, deceased, conveyed the said land to George Clarke of the city, county and state of New York;” and further, that “ whereas it appears- that the deed was executed by the governor of the state of Ohio, to the said James Scott, soon after the entry, and that pursuant to law the said deed was sent to the said receiver for delivery, and that not having been delivered, it was burned at the burning of the land office at Defiance, April 10, 1851.”
The evidence upon which Clarke procured such deed from the governor, in 1866, was an instrument purporting to be a deed from Mary J. Potter and her husband to Clarke, and the following affidavit:
“ State of New York, City and County of New Yorlc, ss :
We, David Wood, and Susan Wood, being by me duly sworn according to law, doth depose and say that they are and have been intimately acquainted with Mary J. Potter, the wife of William Potter, for the past thirty years, and who are the persons described in and who executed the foregoing deed to George Clarke, bearing even date herewith for the following described lands: The southwest J of the north J of section twenty-seven, and the southeast quarter of the southeast J of section twenty-seven, and the northwest J of the northeast J- of section thirty-four, all in township three south, in range eleven east, in Hardin county, Ohio ; also one other tract of land, the *418 east half of the southeast quarter of section five, iu township sixty-two north, in range seven west, in the state of Missouri, containing eighty acres ; and all of said lands were formerly owned by John McKiggon of Alleghany county, Pennsylvania, during his life and up to the time of his death, and who died during the summer of 1842, leaving no wife or children, no father or mother, and but one brother and one sister; that his brother was never married, and has since died without issue, and we know the said Mary J. Potter, the wife of the said William Potter, to be the sister and only heir-at-law of the said John MaKiggon, dec’d, and that the said Mary J. Potter was married to her present husband previous to her brother’s death. David Wood.
SusaN Wood.
“ Sworn to and subscribed this 9th day
of July, A. D. 1866, before
JOHN Beady, Notary Public,
New York.”
McKiggon testified.in his deposition as follows:
“ My name is John McKiggon. I am about seventy-five years old. I live at No. 1436 Providence avenue, Chester, Pennsylvania. I think I have lived there about nine years.
Q. 2d. State what the fact is as to whether you at any time resided in the town of Alleghany, in the state of Pennsylvania, and if so, at what time, and for what length of time and during what time did you reside there ?
A. I don’t know where Alleghany county is. I passed through there once on my way to Ohio. I never made my home there.
Q. 3d. State if you have now, or at any time have had any knowledge of a person by the name of Mary J. Potter, and what relation or kin there is now or ever was between yourself and the said Mary J. Potter.
A. I never saw a person by the name of Mary J. Potter, and don’t know her and she is no relation of mine whatever.
*419 Q. 4th. State if yon at any time bad a deed of conveyance from James Scott and Mary Scott for 120 acres of land situate in Hardin county, Oliio, and if so for wbat length of time was the deed in your possession, and to whom if any person did you deliver the deed, and what time was the deed delivered by you, and what other papers or evidence of title were delivered by you at same time and to whom ?
A. I had at one time a deed of conveyance from James Scott and Mary Scott for 120 acres of land in Hardin county, Ohio. I had the deed in my possession for over forty years. I let Joseph Taylor have the deed. He had it for years. I gave all the papers 1 had to Taylor along with the deed.
CROSS INTERROGATORIES.
Q. 1st. Have you ever had in your possession the deed from the state of Ohio to the grantee, one Scott, for the land in controversy ?
A. I think I had ; it was the old deed from the state of Ohio.
Mrs. McKiggon testified substantially in the same way. [The forty acres in question here were part of the 120 acres conveyed by Scott to McKiggon.]
It is said Clark may have been guiltless of fraud; but, looking to the record, the whole of which substantially, so far as it relates to this question, is above set forth, nothing could be more improbable than that he was innocent; indeed, that David Wood and Susan Wood committed perjury, if they made the alleged affidavit, cannot be seriously questioned ; and besides, it is clear that the consequences will be precisely the same whether Clark was innocent or guilty ; for he, and those claiming through him, are endeavoring to avail themselves of the fruits of the felony. The pretended rights of Clark, passing through Isaac Bryant, were acquired by William E. King, defendant in error, in 1879, the same year Bridenbaugh, the plaintiff in error, purchased from McKiggon. True, possibly the governor’s deed of 1866 may not be subject to collateral impeachment, even as to the recital of the destruction by fire of the governor’s first deed, which is shown by the testimony of McKiggon to be untrue ; but, according to all author *420 ity, the governor’s deed of 1866 may be directly attacked by a suit in equity. Bridenbaugli’s answer was in the, nature of a cross-petition, and the relief prayed for was that the deed should bo set aside and held for naught, or that it should be held as a conveyance in trust for Bridenbaugh’s benefit. That this had all the force and effect of an equitable action to set aside the governor’s deed, or to have the trust declared, or the first deed declared effectual, is perfectly clear. Klonne v. Bradstreet, 7 Ohio St. 322; Conway v, Duncan, 28 Ohio St. 102; Truman v. Love, 14 Ohio St. 144; and see cases in supreme court of the United States, cited 39 Ohio St. 387.
The title first relied upon by Bryant was based on a tax deed, under which lie went into possession in 1859, and that was the beginning of the alleged adverse possession. The tax title, it is conceded, is wholly defective, and it is well settled that equity will not aid such title. Gwynne v. Neiswanger, 20 Ohio, 556. Eor any taxes lawfully assessed upon the land and paid by Bryant, the law gave him a lien. And as the suit was brought in 1879, the same year King acquired whatever interest he has, and as it is not claimed there was any adverse possession prior to 1859, it follows that an action by Bridenbaugh, to recover the land, would not be barred, even if he had been clothed with the legal title during all that period. For any improvements of a permanent cluiracter which Bryant placed upon the land, of course he would have the rights of an occupying claimant.
The contention of King is, — and in this he is sustained by the district court and this court, — not that Bridenbaugh, or those under whom he claims, had done any act which ought to defeat his rights, but that the mere delay to cause the governor’s deed of 1866 to be set aside and a new deed to be made by him, or the governor’s first deed to be declared effectual, amounted to an abandonment of all interest in the land. This is said in the statement of the case and emphatically reiterated several times in the opinion. I deny that the position is tenable. The receipt and certificate, above mentioned, and the deed from Scott to McKiggon, were delivered by the latter to Bridenbaugh, at the time Bridenbaugh receiv *421 ed bis deed from McKiggon, and it seems to me the court below lost sight of the force and effect of the title which Bridenbaugli acquired, especially in view of the first deed executed by the governor.
According to decisions in Missouri, Illinois, Iowa, Kentucky, California, and some other states, such certificate vests an inchoate or imperfect title in the vendee, which will enable him to maintain ejectment. But in Ohio, as in the United States courts, the purchaser has only an equitable title, though it is a title which cau be aliened or devised, and, upon the death of the purchaser, before the issue of such deed, the title descends to his heirs, and the purchaser’s alienee, devisee and heirs, respectively, are entitled to the deed in place of the person to whom the certificate was given. The legal holder of the certificate has a perfect equity, and is, in truth, owner of the land; and it is perfectly well settled that, as against the holder of such certificate, the statute of limitations will not run in favor of one in possession of such property, until the deed is executed. This is well illustrated in the carefully considered case of Wallace v. Minor, 6 Ohio, 366; s. c. on re-argument, 7 Ohio, 1 pt. 249. There the patent was issued in 1818, when the land had been in the adverse possession of another person for twenty-five years, and such person continued in possession until ejected in that case in 1831, the suit having been brought in 1830. Collett, J., said : “ It is believed that it is not very uncommon for surveys in the Virginia military district to remain unpatented for twenty-five years, especially where the owners die or are non-residents, as is frequently the case.” Again: “It is the opinion of a majority of the court, that the owner of an entry and survey in the Virginia military district, cannot sustain an ejectment to recover the possession of the land entered and surveyed; that he must, before lie brings his action, obtain the legal title from the United State; that before he does this, his title is an equitable one only. No right of action having accrued to Powell, in hjs lifetime, nor to his heirs until their patent issued in 1818, which is not yet twenty-one years, this action is not barred by the statute.” And that decision is followed or sup *422 ported by several cases, among them Dake v. Thompson, 16 Ohio, 34; Green Tp. v. Campbell, 16 Ohio St. 11; Clark v. Southard, 26 Ohio St. 408; Seeley v. Thomas, 31 Ohio St. 301.
Returning to the question of. the neglect of McKiggon to obtain a deed from the governor, or to cause the governor's deed of 1866 to be set aside, and even laying out of view the governor’s former deed, upon what ground can it b.e said that the title of Bridenbaugh is defeated ? McKiggon, at the time of his purchase was, and he has continued to be, a resident of Pennsylvania, illiterate, and now nearly or quite eighty years of age. When he purchased the land it was an unbroken forest, and so it remained for more than twenty years. He has done no act calculated to mislead or deceive anybody, and, as already stated, .the sole complaint is his neglect to obtain another deed from the governor and place it on record. “ A man cannot lose the title to his lands by leaving them in their natural state without improvement, or forfeit them by nonuser.” Boston v. Lecraw, 17 Howard U. S. 426, 436.
Several cases are cited in the opinion of the majority, which are claimed to support this decision ; but I deny that any one of them, when carefully examined, will lend it any support. A passage is cited from the opinion of the chancellor in the great case of Smith v. Clay, 3 Br. C. C. 639, but when all that he said upon the subject is examined, it will show very clearly that this decision is in direct opposition to it. The opinion upon that point is as follows : “ There are two questions. First, what period of time is a bar to a bill of review ? Second, from what time this period shall be computed. To the first question the answer here is easy. Twenty years is the period. Edwards v. Carrol, 5 Bro. Par. Cas. 466, is decisive, and not now open to argument. A court of equity, which is never active in relief against conscience, or public convenience, has always refused to aid stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced, and *423 therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court. Therefore, in Fitter v. Lord Macclesfield, Lord North said rightly, that “ though there was no limitation to a bill of review, yet after twenty-two years, he would not reverse a decree but upon very apparent error. Fxpedit repúblicas nt sit finis litium, is a maxim that has prevailed in this court at all times, without the help of an act of parliament. But as the court has no legislative authority, it could not properly define the time of bar, by a positive rule, to an hour, or a minute, or a year, it was governed by circumstances. But as often as parliament had limited the time of actions and remedies to a certain period, in legal proceedings, the court of chancery adopted that rule, and applied it to similar cases -in equity. For when the legislature had fixed the time at law, it would have been preposterous for equity, which by its own proper authority always maintained a limitation, to countenance laches beyond the period that law had been' confined to by parliament. And therefore, in all cases where the legal right has been barred by parliament, the equitable rights to the same thing have been concluded by the same bar.” Then, after stating several instances, he proceeds with the other question as to the time from which the period is to be computed.
The same view is strongly enforced in Larrowe v. Beam, 10 Ohio, 498, 502, in which Smith v. Clay is approved. Grimke, J., said: “ It appears that a period of more than thirty years has elapsed from the death of George Resley, sen., the time when the right to demand dower first accrued, and the commencement of this suit. But as the petitioner resided out of the state until the year 1835, it is attempted to avoid the effect of the exception in the statute of limitations, by a reliance on the laches and gross negligence indicated by not having instituted these proceedings at an earlier period. And xmdoubtedly the mere lapse of time, which has been truly said to obscure all human testimony, may sometimes be a bar to the assertion of a stale demand. In such cases courts of equity act sometimes by analogy to the statute of limitations, and sometimes upon their own inherent doctrine of dis *424 couraging, for the peace of society, antiquated demands, by refusing to interfere where there has been extreme and unreasonable backwardness in the prosecution of the claim. Mit. Eq. 269, 274. But I do not know that there is any case in which the defense has been distinctly placed upon this ground, where there has been a statute of limitation applicable to the case. If the party be guilty of such laches in prosecuting his title as would bar him if his title were solely at law, he will be barred in equity. Smith v. Clay, 3 Br. C. C. 640. But further than this the courts have not ventured to go. If there is a statute of limitation in force, a court of equity acts not merely in analogy to it, but in strict obedience to its provisions.” In that suit in equity for dower, jmosecuted by the widow, it was held that it was not only the duty of the court to have regard to the statute of limitations of twenty-one years, but that regard must also be had to the exception then in force which prevented the statute from running against those who were non-residents of the state. As the widow was a non-resident from the death of her husband in 1809 until 1835, and brought her suit in 1840, it was held she was not barred, although there had been continuous adverse occupancy for more than twenty-one years. So in Gibler v. Trimble, 14 Ohio, 333, 343, it was said : “ Stale equities will not be enforced. Where a party having an equity neglects to enforce it for a period which would constitute a bar at law, under the statute, in analogy to the statute it will also be barred in equity.” And there are many other cases to the same effect in this state and elsewhere.
As King commenced this litigation, it was the plain duty of the court to hold that the governor’s deed, which was obtained by fraud, should be set aside and held for naught, or that it should be held as a conveyance in trust for the benefit of MeKiggon and those claiming through him, or that, setting aside the governor’s deed of 1866, effect should be given to his first deed. If the first course had been adopted and the suit had been dismissed without prejudice to a future action by either party, I would have been content. That would have left Bridenbaugh at liberty to obtain a decree setting aside the *425 governor’s deed of 1866, so that he might clothe himself with the legal title, if1 not then clothed with it, -with a view to an action to recover possession of the land; and it would have left King free to protect himself, if he could be protected, by the statute of limitations. It is difficult, however, to answer the claim that King, having instituted the suit when he had no right to maintain it, the court of equity which thus acquired jurisdiction of the subject matter and parties, should have decreed that the deed of 1866 enured to the benefit of Bridenbaugh, and that the governor’s former deed should have full effect, and thus ended, instead of laying a foundation for, future litigation. But the result,- as determined by the district court and this court is very different. Although King is entitled to neither relief nor protection by reason of his tax title, except by way of lien for the amount paid, because the tax title is void ; although he is not entitled to relief or protection, except with respect to improvements, by reason of lapse of time during which he has occupied the property, -because in analogy to the statute of limitations the period is twenty-one years, and that period liad not elapsed when this suit was brought; although he is entitled to no relief or protection by reason of the deed of 1866, which is the source of his title, for the sole foundation of that deed was perjury, and the court should have so declared; yet the court not only refuse to hold that the deed of 1866 should enure to the benefit of Briden-baugh, not only refuse to give effect to the governor’s former deed, but adjudge that King, whose pretended legal title is founded on felony, shall be quieted in his title as against Bri-denbaugh, and yet Bridenbaugh had all the rights of Scott, who honestly and in good faith bought the land from the state of Ohio, the owner,— paid the purchase money in full,— and received a certificate of purchase in due form, and the governor’s deed to Scott was actually executed. Vie-wing the claim of King in the most favorable light that can be claimed for it, the decision only proves that “ hard cases make shipwreck of the law.”
Eollett, J., concurred in the foregoing dissent.